UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-cr-00050-SEB-TAB |
| | ) | |
| ANTHONY MICHAEL BENTLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by counsel, Zachary A. Myers, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum and Adam Eakman, Assistant United

States Attorneys, hereby submits this Sentencing Memorandum in support of a sentence for the

Defendant Anthony Michael Bentley of **30 years of imprisonment** followed by a **lifetime of**

**supervised release**.[1]

## I.        INTRODUCTION

"Show more." "Do more." "Talk Dirty." "Show me yu worth the trip."  These were some

of the many words uttered by the Defendant online to persuade young girls to send him sexually

explicit photographs through Facebook Messenger.  He did so hiding behind the alias "Chris

Jones" on Facebook, where he used photographs of an African American male (Individual 1) that

the Defendant obtained off the Internet without Individual 1's knowledge or consent.  Through

---

[1] In recommending a total sentence of 30 years, the government would propose Counts 1 and 2 (Child 1) result in a total sentence of 15 years each (to run concurrent with each other), and Counts 3 and 4 (Child 2) result in a total sentence of 15 years each (to run concurrent with each other), all of which to be run consecutive to each other.  The government would recommend 2 years on Count 5 to run concurrent to all other Counts.

many lies and much deceit, the Defendant persuaded and enticed two minor victims in Indiana (Child 1 – age 12; Child 2 – age 17) to send sexually explicit photographs of themselves to the Defendant, which they did.  He misrepresented his name, photograph (using Individual 1's photographs), and age (making himself appear seem much younger than he actually was) to entice the girls to send photos to him.  The Defendant also sent sexually explicit images of Individual 1 to the minors – who the government later learned was a minor at the time the photographs were taken.  As a result, the Defendant distributed child pornography to each of the minors in this case.

The impact of this offense still haunts these girls today.  According to Child 2, "I was a young child and gullible.  I was lied to who I was talking to and guilt tripped into sending pictures I was uncomfortable sending. . . . Even though this situation happened 7 years I still deal with the embarrassment, mistrust, and hurt that the situation has caused me."

Additionally, the Defendant not only exploited the two minor girls from Indiana, but in using the photographs of Individual 1 to do so, made Individual 1 the subject of this investigation until law enforcement uncovered evidence tying the Facebook account to the Defendant.

The Defendant, on the other hand, was living two lives.  The first was the life he portrayed to the public – that of a doting fiancé/husband, new father, and loyal family man. The second was the dark life he portrayed on the Internet – hiding under the guise of "Chris Jones" to prey on minor victims and obtain child pornography.  These two lives often intersected, as investigators uncovered evidence that the Defendant was accessing the Chris Jones account all the time – including while he was at the hospital caring for his sick child.  His exploitation knows no bounds.

The Defendant had every opportunity to come clean as to his conduct but continuously failed to do so and in fact, purposely attempted to derail this investigation.  During a search of his residence – many months after the FBI searched the Defendant's parents' residence for evidence regarding this same matter (and which the Defendant was aware) – the FBI asked the Defendant multiple times whether he had any knowledge of a Facebook account in the name of "Chris Jones."  He falsely denied having any knowledge of it, stating "I've never seen that account".  At the time he made those statements, the Defendant had knowledge of, and had seen the Chris Jones Facebook account, as he used the account to sexually exploit Child 1 and Child 2.  The Defendant knowingly and willfully made those statements, which were material because they had the potential of redirecting the FBI investigation to other innocent individuals who had nothing to do with the sexual exploitation of minors.  Even more telling, investigators found a cell phone that the Defendant hid under the carpet of a locked safe in his residence – a cell phone that contained incriminating evidence of "Chris Jones".   This was yet another step taken to conceal his crime.

The combined actions of the Defendant support a **30-year sentence**, a significant sentence to ensure the Defendant – and others that seek to do the same predatory behavior on the Internet – stop sexually exploiting minors to fuel their own sexual fantasies.

## II.      BACKGROUND

The government provides the following summarized account of the Defendant's criminal conduct, much of which is described in the PSR and Government's Factual Basis (Dkt. 124), to which the Defendant acknowledged on the record at the change of plea hearing that he did what was stated in the factual basis. (Dkt. 138)  For any evidence discussed below that is not

described in the PSR, the government offers such information by way of factual proffer, to which Special Agent Russell Warlick, FBI, would testify if called at the sentencing hearing.

**A.      The Defendant's Sexual Exploitation of CHILD 1 and CHILD 2**

The Defendant used a Facebook account under the name "Chris Jones" to sexually exploit two minor females, Child 1 and Child 2.  The Defendant populated this Facebook account with pictures of a young, African American male (Individual 1) that the Defendant acquired from photo-sharing websites such as Instagram and other sources:





The Defendant used this Chris Jones Facebook account in an effort to persuade, induce, and entice Child 1 and Child 2 to create images and videos of themselves engaged in sexually explicit conduct and send them to the Defendant (posing as "Chris Jones"). In reality, the Defendant was not a young African American male named "Chris Jones" but rather a white, mid-twenties man with a girlfriend (and later a child).

From on or about August 17, 2018, through on or about August 22, 2018, the Defendant conversed with Child 1—a 12-year-old girl residing in the Southern District of Indiana—over Facebook Messenger, purporting to be "Chris Jones." During those conversations, the Defendant continuously persuaded Child 1 to send him sexually explicit photographs and videos. He did so using language such as: "Keep going. Show me yu worth the trip'"; "Step ya game up for me. Get comfortable. Show me yu want daddy there"; "Keep going"; "Talk etc. Show more. Do more"; and "Talk dirty. Taste yaself. Change position. Use a mirror. Send longer ones. Etc. Show me yu want me an this dick there." Child 1 complied. At the direction of the Defendant, Child 1 sent approximately 14 videos and one image of Child 1 engaging in sexually explicit conduct between on or about August 17 and August 18, 2018, and another video on or about August 22, 2018. These files are listed in Counts 1 and 2 of the Superseding Indictment. All of the files consist of Child 1 masturbating and/or displaying her genital and/or pubic area.

For instance, on or about August 18, 2018, Defendant requested videos of sexually explicit conduct from Child 1. In response, Child 1 sent the Defendant a 20 second video [video-1534562672.mp4 (2174982749449659)] of Child 1 masturbating, to include inserting a finger into her vagina multiple times. Child 1's genital and/or pubic area is clearly visible in the video. The Defendant also sent nude images of Individual 1 to Child 1 and claimed that they were pictures of himself. Investigators later learned that Individual 1 was a minor in those

photographs, so the Defendant distributed child pornography to these minors.  At one point, Child 1 stated that she wanted to send the files over a different social media platform, but the Defendant insisted that Child 1 send them to him through Facebook Messenger "[c]ause I wanna keep the pics to come look at."  Child 1 created the image and videos charged in the Superseding Indictment using a cellphone that was manufactured using materials that had been mailed, shipped, or transported across state lines.

The Defendant conversed with Child 2 over Facebook Messenger using the Chris Jones Facebook account and purporting to be "Chris Jones." The communications began at least as early as January 21, 2018 and continued through early 2020.  Child 2 was a 17-year-old female residing in the Southern District of Indiana at the time that she sent the sexually explicit videos charged in Counts 3 and 4 of the Superseding Indictment.

During the course of their conversations, the Defendant continuously persuaded and enticed Child 2 to produce sexually explicit files and send them to him – specifically a video of Child 2 stripping.  After Child 2 sent the Defendant a video, the Defendant stated: "But it's not what I wanted love", "I wanna see your whole body love," and "But I want yu to strip for me baby."  Child 2 ultimately ended up sending, at the direction of the Defendant, two videos of Child 2 engaging in sexually explicit conduct on March 6, 2018, and March 12, 2018 respectively [Counts 3 and 4 of the Superseding Indictment].  At Defendant's direction, Child 2 created both videos charged in the Superseding Indictment using a cellphone that was manufactured using materials that had been mailed, shipped, or transported across state lines.

In both videos, Child 2 does a "strip tease" as directed by the Defendant, where Child 2 slowly takes off her clothes and shows her entire naked body while dancing.  Child 2's genital and/or pubic area is clearly visible in the videos.  After the first video (Count 3), the Defendant

says "I wanted it to longer love" and "[a] strip tease is a tease.  Yu took them straight off."  He requests that she "make a new one", that she "[l]ook up a strip tease an watch one" and "[y]u take ya time.  Tease.  Be sexy. Etc."  Child 2 then produced the second video (Count 4) and sent it to the Defendant.  The Defendant also sent Child 2 the same child pornography images of Individual 1 that he sent to Child 1.

Each image or video listed in Counts 1 through 4 of the Superseding Indictment clearly shows the pubic area of Child 1 or Child 2 through either striptease videos where the minor's vagina is exposed, images where the minor's legs are spread open and the focus of the photograph is the vagina, or masturbation by the minor child where the vagina is visible.

The internet is a facility of interstate or foreign commerce and that communications and data transfers through Facebook Messenger were in or affecting interstate or foreign commerce.

## B.    The Defendant's False Statements to Law Enforcement

The Defendant lied to FBI Special Agents about his knowledge of the "Chris Jones" Facebook account.  On March 6, 2020, the FBI executed a search warrant at the Defendant's and his girlfriend's residence, which occurred approximately three months after the FBI executed a search warrant at his parents' residence.  During the search of his residence, the Defendant agreed to a post-*Miranda* interview with the FBI, which was audio recorded.  During the interview, the FBI asked the Defendant multiple times whether he had any knowledge of a Facebook account in the name of "Chris Jones."  He falsely denied having any knowledge of it, at one point even saying, "I've never seen that account."  In fact, law enforcement located and seized the Defendant's old phone (a Samsung Galaxy S8, SM-G950U, IMEI 358330083049022, SN: R38J60CZN9V) that the Defendant hid under the carpet of a locked safe in the Defendant's residence, which contained evidence of the "Chris Jones" Facebook account, including the nude

images of Individual 1 (who was a minor at the time) that the Defendant sent to Child 1 and Child 2.

At the time the Defendant made those statements, the Defendant had knowledge of, and had seen the Chris Jones Facebook account, as he used that account to sexually exploit Child 1 and Child 2 as described above.  The Defendant knowingly and willfully made those statements. The statements were material, as they had the potential of redirecting the FBI investigation to other individuals.  The Defendant also hid the phone in the safe as another attempt to conceal his involvement in this crime.

### C.    Procedural History

This case has been pending for over three years.  After ten continuances, on November 24, 2023, just days before the November 28, 2023 jury trial, the Defendant filed a Petition to Plead Guilty to the Superseding Indictment without a plea agreement to four counts of sexual exploitation of a minor, in violation of Title 18, United States Code, Section 2251, and one count of making false statements to law enforcement, in violation of Title 18, United States Code, Section 1001.  Dkt. 120.

On November 28, 2023, the Defendant pled guilty to all five of those charges before this Court.  Dkt. 125.  The sentencing hearing is set before this Court on April 12, 2024.

The Defendant made various objections to the PSR, which will be addressed below.

### D.   Restitution

The government consulted with counsel for the Defendant prior to the sentencing hearing regarding the issue of restitution to identified victims Child 1 and Child 2.  Counsel represented that the Defendant agrees to pay $5,000 each in restitution to Child 1 and Child 2.

## III.     THE PSR CORRECTLY APPLIES THE APPROPRIATE GUIDELINE ENHANCEMENTS TO THE ADVISORY SENTENCING GUILDEINES

The Defendant makes various objections to the application of certain advisory sentencing guideline enhancements in the PSR, including:

- the application of an enhancement for the offense involving the commission of "sexual contact", pursuant to U.S.S.G. § 2G2.1(b)(2)(A);

- the application of an enhancement for misrepresenting Defendant's identity or using a computer to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct, pursuant to U.S.S.G. § 2G2.1(b)(6);

- the application of the base offense and enhancements for false statements, pursuant to U.S.S.G. § 2J1.2; and

- the application of an enhancement for pattern of exploitation, pursuant to U.S.S.G. § 4B1.5.

For the reasons set forth below, Defendant's assertions are unsupported by law and fact, and the PSR correctly applies each of the enhancements.

### A.  The PSR correctly applies the enhancement for the offense involving the commission of "sexual contact" under U.S.S.G. § 2G2.1(b)(2)(A)

The enhancement for the offense involving the commission of "sexual contact" under U.S.S.G. § 2G2.1(b)(2)(A) was appropriately considered and applied by U.S. Probation in the PSR in this matter.

- "Sexual contact" is defined, in pertinent part, as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or

arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3) (emphasis

added)

Here, the government agrees with Probation's determination that the masturbation shown

in the relevant videos fits under the term "sexual contact."  The Seventh Circuit has relied upon

other Circuits that have found masturbation to be "sexual contact" in similar contexts.  *See*

*United States v. Shea*, 493 F. App'x 792, 796 (7th Cir. 2012) ("And his demands that the victims

touch themselves sexually and sadistically, and in one instance that a 15-year-old physically

abuse her friend for Shea's gratification, warranted a 2–level increase for the commission of

sexual contact.") (citing U.S.S.G. § 2G2.1(b)(2)(A) & n. 2; *United States v. Pawlowski,* 682 F.3d

205, 207–08, 211–13 (3d Cir.2012) (finding masturbation to qualify as "sexual contact"); *United*

*States v. Aldrich,* 566 F.3d 976, 979 (11th Cir.2009); *United States v. Shafer,* 573 F.3d 267, 269,

277–78 (6th Cir.2009) (same)); *see also Burgard v. United States*, No. 10-CR-30085-DRH, 2016

WL 245186, at *6 (S.D. Ill. Jan. 21, 2016) ("While 'sexual act' requires that an image depict the

touching 'of another person,' 18 U.S.C. § 2246(b)(2), 'sexual contact' requires only that the

image depict the touching 'of *any* person,'. . . .Accordingly, the conduct depicted in the

photographs taken from Burgard's phone unambiguously qualifies as 'sexual contact.' The

photos were described as including lewd and lascivious exhibition of the female genitals and

minors engaging in sexually explicit conduct, including masturbation") (emphasis added).

In *Shafer*, the Sixth Circuit explained:

> The statute defines "sexual contact" to mean "the intentional
> touching, either directly or through the clothing, of the genitalia,
> anus, groin, breast, inner thigh, or buttocks of any person (emphasis
> added) with an intent to abuse, humiliate, harass, degrade, or arouse
> or gratify the sexual desire of any person (emphasis added). 18
> U.S.C. § 2246(3). "Any person" includes a person touching himself
> or herself. *See* MERRIAM WEBSTER'S COLLEGIATE
> DICTIONARY 53 (10th ed.1995) (defining "any" as "EVERY—

> used to indicate one selected without restriction"). This argument is strengthened by the fact that the definition of "sexual act" requires the touching "of another person." § 2246(2)(D). "Another person" clearly requires at least two individuals to be involved in the act. Thus, because Congress chose to use different language when defining "sexual contact," it seems clear that Congress intended not to limit "sexual contact" in the same way it limited "sexual act."

*Shafer*, 573 F.3d at 272–74.

Many other Circuits that have addressed this issue have similarly found that masturbation qualifies as "sexual contact" under U.S.S.G. § 2G2.1(b)(2)(A). *See, e.g., United States v. Raiburn*, 20 F.4th 416, 422–24 (8th Cir. 2021); *United States v. Butler*, 65 F.4th 199, 202–03 (5th Cir. 2023); *United States v. Sanchez*, 30 F.4th 1063, 1075–76 (11th Cir.), cert. denied, 143 S. Ct. 227, 214 L. Ed. 2d 90 (2022); *United States v. Weisinger*, 586 F. App'x 733, 738–39 (2d Cir. 2014). None of these cases suggest that "sexual contact" requires, as Defendant suggests, physical contact with another person.

For those reasons, Defendant's offenses in this matter relating to Child 1 involved the commission of "sexual contact" under U.S.S.G. §2G2.1(b)(2)(A), and therefore the enhancement was appropriately considered and applied in the PSR.

**B. The PSR correctly applies the enhancement for misrepresentation of the Defendant's identity <u>or</u> use of a computer to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct under U.S.S.G. §2G2.1(b)(6)**

Defendant argues that the enhancement should not apply because the Defendant misrepresented his identity to conceal his identity, not with the intent to persuade, induce, entice, coerce a minor into producing sexually explicit conduct, pursuant to U.S.S.G. § 2G2.1(b)(6)(A). As an initial matter, while the Defendant's objection focuses solely on the misuse of the Defendant's identity under Section 2G2.1(b)(6)(A), he fails to address that such enhancement would also apply here under the provision for use of a computer under Section 2G2.1(b)(6)(B):

> If, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved (A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; <u>or</u> (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by **2** levels.

U.S.S.G. § 2G2.1(b)(6) (emphasis added).

Defendant argues that the enhancement should not apply because the Defendant misrepresented his identity to conceal his identity, not with the intent to persuade, induce, entice, coerce a minor into producing sexually explicit conduct. That argument is unsupported by the facts and evidence here. As Probation recognized, the entire purpose of creating this false identity (and therefore concealing his identity) was so the Defendant could use that identity on Facebook to find and cultivate online relationships with the minor victims and convince them to send him sexually explicit photographs. He used the fake name "Chris Jones" and pictures of an African American male to create a persona to convince these girls to send him sexually explicit images. He misrepresented his age to them as well so that they felt more comfortable sending the photographs. Indeed, Child 2 only communicated with and sent photographs to the Defendant because she was attracted to "Chris Jones" and believed that was the individual she was communicating with. He only had access to these girls through the fake Facebook account. He did not just create the fictitious identity; he used it to commit the offense. *See United States v. Cox*, No. 1:18-CR-83-HAB, 2021 WL 1170198, at *2–3 (N.D. Ind. Mar. 29, 2021) ("It is unlikely that the Facebook account of a mid-30s construction company IT employee would have much luck enticing high school girls to send its owner nude photographs. Realizing this, Defendant used fictitious identities that would have a greater chance of obtaining the material he

wanted. This is all the enhancement requires."); *United States v.* Hinkley, 803 F.3d 85, 93 (1st Cir. 2015) (applying enhancement where fictitious identity facilitated access to victims).

Regardless, Section 2G2.1(b)(6)(B) allows for a much simpler basis to apply the enhancement.   U.S.S.G. § 2G2.1(b)(6)(B) mandates the application of the same enhancement if a "computer or interactive computer service" is used in the crime, to include cell phones. *See United States v. Shea*, 493 F. App'x 792, 796 (7th Cir. 2012) ("He used a computer to communicate directly with each of the victims and coerce them to engage in sexually explicit conduct, and so he should have received an increase of 2 levels for each of the counts."); *United States v. Osborne*, 828 F. App'x 326, 327 (7th Cir. 2020) (regarding district court's application of adjustment under U.S.S.G. § 2G2.1(b)(6)(B) based on computer use, "Counsel rightly determines that it would be frivolous to argue that this was error because Osborne admitted to using a computer to request sexually explicit photos from his victims."); *United States v. Cox*, No. 1:18-CR-83-HAB, 2021 WL 1170198, at *2–3 (N.D. Ind. Mar. 29, 2021) (applying enhancement pursuant to U.S.S.G. § 2G2.1(b)(6)(B) where "[h]ere, virtually all the efforts to obtain images of child pornography involved the use of digital services, including Facebook and Pinger. Defendant does not, and cannot, dispute this.").

There is no question that the Defendant used a computer to commit the offense, as the communications and transmission of sexually explicit images occurred over Facebook Messenger and evidence of this account was located on the Defendant's cell phone.  The 2-level enhancement would apply under this provision as well.

**C. The PSR correctly applies U.S.S.G. § 2J1.2(a), where the statutory maximum term of imprisonment enhancement for Title 18, United States Code, Section 1001 relates to an offense under Title 18, United States Code, Section 2251**

As an initial matter, the government alerts the Court that the government's penalty sheet with respect to the Superseding Indictment (Dkt. #98) and the Defendant's Petition to Plead Guilty (Dkt. # 120) are not correct with respect to the penalties for False Statements count of the Superseding Indictment (Count 5). Both documents incorrectly state that the statutory term of imprisonment is up to ten years. Ordinarily, a Defendant convicted of Title 18, United States Code, Section 1001 faces a statutory term of imprisonment of up to five years. However, that penalty increases to a maximum statutory term of imprisonment of up to eight years if, as here, the matter relates to an offense under chapter 110 of the United States Code (Sexual Exploitation of a Minor).

The Defendant incorrectly believes that U.S.S.G. § 2J1.2(a) does not apply here and therefore, the base offense level for the Section 1001 conviction (in paragraph 61) of the PSR is incorrect. The Commentary to U.S.S.G. § 2J1.2 states that this provision applies for offenses under 18 U.S.C. §§ 1001 "when the statutory maximum term of eight years' imprisonment applies because the matter relates to . . . sex offenses under 18 U.S.C. § . . .110 . . .of title 18, United States Code". Here, four of the Defendant's counts of conviction are clearly pursuant to 18 U.S.C. § 2251. As discussed above, convictions pursuant to 18 U.S.C. § 2251 are in Chapter 110 (Sexual Exploitation and Other Abuse of Children) of Title 18 of the United States Code. Therefore, Probation correctly applied U.S.S.G. § 2J1.2 and appropriately calculated the base offense level in paragraph 61.

Furthermore, the Defendant also incorrectly states that the four-point enhancement under U.S.S.G. § 2J1.2(b)(1)(A) does not apply. As discussed above, the defendant was also convicted

14

under 18 U.S.C. § 1001 and the statutory maximum term of eight years imprisonment applies because the matter relates to a sex offense under Chapter 110 of the United States Code (Section 2251 – Sexual Exploitation of a Minor).  This enhancement clearly applies and no changes to the PSR are warranted.

Regardless, Section 2J1.2 has no impact on the Defendant's sentence, as the Section 1001 charge groups with the underlying sexual exploitation charges and triggers the 2-level obstruction enhancement under U.S.S.G. § 3C1.1 – which is accurately depicted in the guideline calculations in the PSR.

### D.  The PSR correctly applies the enhancement for pattern of activity involving prohibited sexual conduct under U.S.S.G. § 4B1.5.

The Defendant alleges that he did not engage in a pattern of activity involving prohibited sexual conduct under U.S.S.G. § 4B1.5 because the guideline applies only to offenders "who present a continuing danger to the public" and asserts that "Bentley does not".

U.S.S.G. § 4B1.5(b) applies "In any case in which the defendant's instant offense of conviction is a covered sex crime, . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct."

"Pattern of activity" is described in the Application Notes as follows:

> (i)   In General.—For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

> (ii)   Occasion of Prohibited Sexual Conduct.—An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

> Definition.—For purposes of subsection (b), "prohibited sexual conduct" means . . . the production of child pornography.

Here, the defendant was convicted of four separate counts of sexual exploitation of a minor (production of child pornography) with two separate victims. Therefore, he engaged in a pattern of activity involving sexual conduct on at least two separate occasions. That the language about "continuing danger" referred to by the Defendant does not impact whether the enhancement is applied, but rather describes the purpose of the enhancement. *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1221 (10th Cir.), *cert. denied*, 143 S. Ct. 467, 214 L. Ed. 2d 265 (2022) ("The purpose of § 4B1.5(b)(1) is to protect minors from sex offenders 'who present a continuing danger to the public.'") (citing U.S.S.G. § 4B1.5 cmt. bkgd. (noting that the enhancement is derived from a Congressional directive "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual exploitation of minors")). Also irrelevant is the fact that the Defendant does not consider himself as presenting a continuing danger to the public. That the enhancement indeed applies shows that the Defendant is a "continuing danger to the public." The Defendant's conduct appropriately fits into this category and the enhancement was correctly applied.

## IV.   ARGUMENT

A sentence of **30 years of imprisonment with lifetime of supervised release to follow** is sufficient but not greater than necessary. Here, the advisory sentencing guidelines appropriately capture (1) the pervasiveness of this Defendant in exploiting these two Indiana minors to obtain images and videos of sexually explicit conduct over a lengthy period of time, (2) the lies and personas that he hid behind; and (3) the continued false statements he made to hide his conduct.

16

**A.    Nature and Circumstances of the Defendant's Sexual Exploitation of Minors Warrants a Sentence of 30 Years to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

It is undeniable that the nature and circumstances of the Defendant's offense of conviction are serious.  The Defendant preyed on and sexually exploited two minor children over the Internet.  He enticed them under the guise of "Chris Jones," using Individual 1's photographs to do so (unbeknownst to Individual 1, who did not know or had no connection to the Defendant – another unwitting victim).  His requests for sexually explicit photographs and videos were persistent and pervasive, directing the girls with language like:

- Child 1: "Keep going.  Show me yu worth the trip'"; "Step ya game up for me.  Get comfortable.  Show me yu want daddy there"; "Keep going"; "Talk etc. Show more.  Do more"; and "Talk dirty. Taste yaself.  Change position.  Use a mirror.  Send longer ones.  Etc. Show me yu want me an this dick there."

- Child 2: "I wanted it to longer love"; "[a] strip tease is a tease.  Yu took them straight off."; and  "[y]u take ya time.  Tease.  Be sexy. Etc."

A sentence of 30 years in prison reflects the seriousness of, and provides just punishment for, the grievous harm the Defendant caused some of the most vulnerable members of our society.  18 U.S.C. § 3553(a)(2)(A).  Such a sentence is especially important in these types of Internet cases where predators can hide behind fake personas and keyboards to meet, cultivate relationships with, and cause children to send sexually explicit images over the Internet.

Child pornography is a particularly insidious crime because it memorializes sexual abuse.  It is used for the personal sexual gratification of men like the Defendant.  It is used to entice and coerce other children into acts of sexual abuse.  It is used as an item of barter between likeminded child sex offenders.  It is used to encourage other child sex offenders to physically abuse other children for the purpose of producing more child pornography.  It haunts the children depicted in it, who live daily with the knowledge that countless men like the defendant use

videos and images of their worst experiences in life for sexual gratification.   Indeed, the U.S. Supreme Court has recognized the unique and enduring perniciousness of producing child pornography.  *See, e.g.*, *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) ("pornography poses an even greater threat to the child victim than does sexual abuse or prostitution" (internal quotations omitted)).

For these reasons, Congress has recognized that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse and allows for the continued victimization of that child.  Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, §§ 121(1) & (2), 110 Stat. 3009-26 (1996) (codified at 18 U.S.C. § 2251 Congressional Findings). These concerns are heightened when a defendant not only views child pornography, but also arranges for its creation like the Defendant did here.

Congress also found that the mere existence of these types of depictions of children, as well as their production and distribution, "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children." *Id*. § 121(10)(A) & (B); *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006) ("Congress found little distinction between the harm caused by a pedophile, be he a distributor or mere consumer of child pornography").

Moreover, the sentence should reflect the seriousness of using another person's identity to commit a heinous crime such as child exploitation.  Indeed, at one point, Individual 1 was the subject of this investigation until law enforcement uncovered evidence tying the Facebook accounts to the Defendant.  In this sense, Individual 1 was also a victim of the Defendant's

18

criminal conduct, and the sentence should reflect just punishment for the harm Individual 1 also suffered as a result.

Taking all of these considerations into account, a sentence of **30 years** is sufficient but not greater than necessary.

**B.  The Defendant's History and Characteristics—Particularly his Obstructive Conduct—Underscore the Need for the Sentence to Protect the Public and Deter the Defendant and Those Like Him**

There is a great need to protect young teens from sexual predators on the Internet, particularly those like the Defendant who misrepresent who they are and hide behind fictitious personas in order to gain access to these children and exploit them.  It is clear from the nature and circumstances of the offense, and the conversations that the Defendant had with the victims, that the Defendant was obsessed with obtaining sexually explicit images from the minor victims.  Even his relationship with his girlfriend and the birth of his child did not halt his abusive contact with minor females online.

There is no reason to believe that Defendant would have stopped on his own but for his arrest in the instant matter.  In fact, he was aware of this investigation yet did not stop.  Search warrants were executed at his parents' residence three months prior to the FBI approaching the Defendant, yet the Defendant continued accessing the Chris Jones account up until the day of the search warrants on his own residence.  The Defendant was given an opportunity to do the right thing when approached by law enforcement, yet he chose to lie about his knowledge of "Chris Jones".  It was not until law enforcement located the phone hidden in the locked safe in the Defendant's residence did they find the evidence connecting the Chris Jones Facebook account to the Defendant.

In sum, the Defendant's exploitative and obstructive conduct speak to the immense danger he poses, and thus underscore the need for the sentence to afford deterrence and protect the public. 18 U.S.C. § 3553(a)(2)(B) and (C). A sentence of 30 years in prison is sufficient but not greater than necessary to accomplish those objectives.

### C. Avoid Unwarranted Sentencing Disparities

In fashioning a sentence, the Court is obligated to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A sentence of **30 years** would avoid any unwarranted sentencing disparities among similar defendants for similar offenses. This sentence would be below the guidelines calculated by the Court and thus presumptively reasonable. *See, e.g. United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *U.S. v. Metzger*, Case No. 1:09-cr-188-LJM-KPF, *aff'd*, WL 4628115, 411 Fed.Appx. 1 (7th Cir. 2010).

As detailed below, numerous similarly situated defendants have received significant sentences. Although each case is unique with the defendant's background and underlying facts, a sentence of **30 years** would be consistent with other cases in this district, including the following:

- *United States v. Terry,* 1:22-cr-00144-MPB-KMB – Sentenced to 20 years on February 13, 2024 after pleading guilty of two counts of sexual exploitation of a minor and one count of possession of child sexual abuse material. The defendant, a Marion County Sheriff's Deputy, communicated with 2 minors (11 and 15-years-old) over Discord and directed them to send videos of themselves engaged in sexually explicit contact. The defendant also possessed over 600 images and videos of child pornography.

- *United States v. Austin*, 1:22-cr-00098-JMS-MG – Sentenced to 25 years on October 4, 2023 after pleading guilty to coercion and enticement of two minors while required to

register as a sex offender and illegally possessing a firearm.  The defendant communicated with a minor over Snapchat and directed the minor to send sexually explicit images of herself.  While detained, the defendant used the jail messaging systems to exploit a second minor, directing the minor to engage in sex acts with an adult male relative and send the videos, and engage in commercial sex acts.

- *United States v. Goldman*, 3:21-cr-00065-RLY-MJD – Sentenced to 20 years on June 12, 2023 after pleading guilty to sexual exploitation of a minor.  The defendant communicated with a 14-year-old girl via Facebook and directed the minor to send him sexually explicit material.

- *United States v. Pettus*, 1:19-cr-00389-JMS-DLP – Sentenced to over 23 years on October 18, 2021 after pleading guilty to sexual exploitation of a minor.  The defendant used the social media platform Instagram to deceive and entice an Indiana teenager to send sexually explicit photos and videos of herself to him.

- *United States v. Fields*, 1:21-cr-00245-JMS-DML – Sentenced to over 27 years after pleading guilty to three counts of sexual exploitation of a minor.  The defendant communicated with multiple underage boys online and received child sex abuse material through them through Snapchat and Omegle.

Here, as in all the cases described above, the Defendant used social media to engage with minors and solicit those minors into creating sexually explicit images and videos and have them send that material to him.  Additionally, here the Defendant lied to law enforcement regarding his knowledge of the fictitious Facebook account that he used to exploit the minors, despite having evidence of that persona on his phone in a locked safe in his residence.  Furthermore, the Defendant waited to plea until the last final minute, days before trial, three years after charging, which forced

the victims to have to re-live the exploitation over and over again in the time it took to get this case resolved.

A sentence of **30 years** is fair and just when comparing Defendant's conduct to other defendants who have been sentenced in this District.

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court (a) apply the enhancements for (1) the offense involving the commission of a "sexual act" or "sexual contact" under U.S.S.G. § 2G2.1(b)(2)(A); (2) misrepresenting Defendant's identity or using a computer to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct under U.S.S.G. § 2G2.1(b)(6); (3) the enhancements under U.S.S.G. § 2J1.2; and (4) pattern of exploitation under U.S.S.G. § 4B1.5, and sentence the Defendant Anthony Bentley to **30 years of imprisonment** with a lifetime of supervised release to follow.


                                        Respectfully submitted,

                                        ZACHARY A. MYERS
                                        United States Attorney


Date: 4/11/2024              By:   /s MaryAnn T. Mindrum
                                   MaryAnn T. Mindrum
                                   Adam Eakman
                                   Assistant United States Attorneys
                                   Office of the United States Attorney
                                   10 West Market Street, Suite 2100
                                   Indianapolis, IN 46204
                                   Tel: (317) 226-6333
                                   E-mail: MaryAnn.Mindrum@usdoj.gov
                                   Email: Adam.Eakman@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2024, a copy of the foregoing GOVERNMENT'S

SENTENCING MEMORANDUM was filed electronically.  Notice of this filing will be sent to

all registered parties by operation of the Court's electronic filing system.  Parties may access this

filing through the Court's system.


By:     /s MaryAnn T. Mindrum
MaryAnn T. Mindrum
Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Tel: (317) 226-6333
E-mail: MaryAnn.Mindrum@usdoj.gov